IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRITTANY R.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:22-cv-01806-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

    Plaintiff Brittany R. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 21. For the reasons set forth

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in March 1988, plaintiff alleges disability beginning May 20, 2019 with a date last insured of June 30, 2023. Tr. 16, 191. Plaintiff alleges disability due to congestive heart failure, diabetes, pancreatitis, high blood pressure, anxiety and triple artery bypass. Tr. 277. Her application was denied initially and upon reconsideration. Tr. 99, 108. On May 26, 2021, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") John D. Sullivan. Tr. 34-68. On July 30, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 11-31. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since May 20, 2019, the alleged onset date. Tr. 16. At step two, the ALJ determined the following impairments were medically determinable and severe: "coronary artery disease status post coronary artery bypass grafting; major depressive disorder; and vision impairment." Tr. 17. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b):

> with lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently, sitting six hours of an eight-hour workday, and standing and/or

>walking up to six hours of an eight-hour workday. She can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. She can have no exposure to hazards or operation of a motor vehicle. The claimant can perform simple, routine tasks at reasoning level 2 or less with simple work-related decisions. She can occasionally interact with supervisors, coworkers, and the public. The claimant would be off task less than five percent scattered throughout the workday.

Tr. 18-19.

At step four, the ALJ found plaintiff unable to perform any past relevant work. Tr. 22. At step five, he found that plaintiff retained the ability to perform other jobs in the national economy such as marker, marker II, and router. Tr. 23. The ALJ therefore found plaintiff not disabled. Tr. 24.

## DISCUSSION

Plaintiff argues the ALJ committed three harmful errors. She contends the ALJ erred by (1) failing to identify her alleged pancreatitis as a medically determinable impairment at step two of the sequential evaluation process, (2) discounting her subjective symptom testimony without a clear and convincing reason for doing so, and (3) improperly evaluating PA Christopher Smith's medical opinion. For the reasons that follow, the Court finds the ALJ erred, reverses, and remands for further proceedings.

**I.     Step Two**

At step two, the ALJ determines "whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment is severe "if it 'significantly limits' an individual's 'ability to do basic work activities.' " *Id.* (citing 20 C.F.R. § 404.1520(c)). The step-two severity analysis is a "threshold showing," *Yuckert*, 482 U.S. at 147, that serves to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is

3 – OPINION & ORDER

unlikely they would be found to be disabled even if their age, education, and experience were taken into account[.]" *Id*. at 153. In evaluating whether the claimant's impairments are severe, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

To deny a claim at step two, an ALJ must provide "substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Glanden*, 86 F.4th at 844 (citing *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)).

Step two is "a *de minimis* requirement that screens out only frivolous claims," *id*. at 843; thus, "properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Id.* at 844. The Ninth Circuit has emphasized that "[a]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (simplified); *accord* SSR 85-28 (explaining that ALJs must apply step two using "great care" by proceeding to step three if a clear determination cannot be made).

Plaintiff argues the ALJ erred by finding her pancreatitis non-severe at step two. Pl.'s Br. at 4-7. Plaintiff asserts the ALJ failed to adequately consider the relevant medical evidence regarding her subjective symptom testimony about the severity of her pancreatitis pain. At step two, the ALJ noted that plaintiff had "episodes of acute pancreatitis," but that "the evidence does not support ongoing pancreatitis and therefore that this is a severe impairment." Tr. 17.

The ALJ failed to support his decision finding that plaintiff could not clear the "de minimis" hurdle at step two with substantial evidence. An impairment like plaintiff's pancreatitis

"can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. Plaintiff submitted significant medical evidence demonstrating that pancreatitis limited her ability to work, even despite treatment. *See, e.g.,* Tr. 2212–13. At the hearing, plaintiff emphasized the severity of her pancreatitis pain, sharing that she sometimes finds it "hard to get up out of bed to even shower, much less to go to a job." Tr. 53. The ALJ erred by relying on medical opinions that described the progression of plaintiff's pancreatitis from acute in May 2019 to "resolving" by January 2020 without acknowledging the ongoing pain and limitations this impairment caused. Tr. 17 (citing Tr. 2242). Although plaintiff's medical record shows her pancreatitis improved over time, it "includes evidence of problems sufficient to pass the de minimis threshold of step two." *Glanden*, 86 F.4th at 844 (citing *Smolen,* 80 F.3d at 1290). In light of the minimal burden plaintiff bears at step two, the ALJ erred by failing to support his decision that plaintiff's pancreatitis was non-severe with substantial evidence.

      The ALJ's step-two error was harmful. When an ALJ resolves step two in a claimant's favor (as he did here), any error in failing to designate specific impairments as severe can be harmless if the ALJ considers those impairments when formulating his assessment of plaintiff's RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[S]tep two was decided in [the plaintiff's] favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand."). The ALJ resolved step two in plaintiff's favor, but did not discuss her pancreatitis testimony at length or reasonably incorporate pancreatitis-related limitations in the RFC analysis. Tr. 20. Finding pancreatitis non-severe at step two was therefore harmful, even though the ALJ resolved step two in plaintiff's favor. *Buck*, 869 F.3d at 1049. On remand, the ALJ must adequately analyze plaintiff's

5 – OPINION & ORDER

pancreatitis at step two and consider the symptoms of that impairment at the subsequent stages of the five-step analysis.

## II.     Symptom Testimony

Plaintiff also contends the ALJ erred by failing to consider her subjective symptom testimony about disabling pancreatitis pain. Pl.'s Br., ECF No. 13 at 7-10. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

6 – OPINION & ORDER

The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified that she takes oxycodone four times per day due to excruciating pain from her chronic pancreatitis, and sometimes finds it hard to get up out of bed to even shower, much less to go to a job. Tr. 53. Similarly, in a pain questionnaire completed in May 2020, plaintiff indicated she had "constant" abdominal pain which was "sometimes . . . so bad I can't get out of bed." Tr. 252. Plaintiff specifically indicated that her pancreatitis pain was "constant" and she was "never sure how my day will be from [one] day to the next." Tr. 253.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20. Specifically, the ALJ found plaintiff's symptom allegations about her pancreatitis pain inconsistent with objective medical evidence and her daily activities. Tr. 20-23.

    A.    *Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the

plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).

The ALJ failed to identify any objective medical records that conflicted with plaintiff's testimony about the extent of her pancreatitis pain. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified that she experiences excruciating pain from her chronic pancreatitis, and sometimes finds it hard to get up out of bed to even shower, much less go to a job. Tr. 53; *see also* Tr. 252 (describing abdominal pain as "constant," and "so bad [she] can't get out of bed"). Defendant acknowledges that the record is "replete" with plaintiff's reports of this significant, constant abdominal pain. Def. Br. at 6 (citing, e.g., Tr. 53, 253). And while the ALJ highlighted medical records showing only "possible and mild" acute pancreatitis with a "mildly complex cyst" at step two, he never identified any objective medical records that conflicted with plaintiff's symptom testimony about her pain at step three. Tr. 17. The ALJ then concluded that "what [pain] is reported does not suggest an inability to sustain the light, unskilled work described by the residual functional capacity." Tr. 20. This was error. Plaintiff's testimony about "constant" and "excruciating" abdominal pain does not match up with the RFC or fit the definition of light work. What is more, the ALJ failed to "identify the testimony she found not credible," and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 49. In sum, because the ALJ failed to identify objective medical evidence that conflicted with plaintiff's fibromyalgia testimony, this was not a clear and convincing reason to discount it.[2]

---

[2] Defendant also tries to bolster the ALJ's conclusion with the impermissible argument

*B. Daily Activities*

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 19-20. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ failed to identify transferable work skills or inconsistencies between plaintiff's daily activities and symptom testimony, and therefore erred. The Ninth Circuit has instructed that a modest level of activity is not sufficient to reject subjective complaints. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled") (quoting *Fair*, 885 F.2d at 603). The ALJ provided a high-level summary of plaintiff's daily routine, noting that she can handle "child and

---

that plaintiff's improvement with treatment did not match up with her allegations of pancreatitis pain. Def. Br., ECF No 17 at 7. Even if this were a compelling reason (it is not), the Court considers only those reasons relied upon by the ALJ, not defendant's post hoc rationalizations. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (stating the court "is constrained to review the reasons the ALJ asserts"). Because that rationale was not part of the ALJ's analysis, the Court declines to consider it.

9 – OPINION & ORDER

pet care…household chores…personal care," and she can shop, drive and make simple meals." Tr. 19. The ALJ's discussion of plaintiff's household chores failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see Dodrill*, 12 F.3d at 918. The mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law. *See Shirley C. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *6 (D. Or. July 15, 2021). Other than summarizing plaintiff's activities, the ALJ did not explain how the listed household chores or occasional ability to drive and shop undermined plaintiff's subjective symptom testimony about pancreatitis or showed any transferable work skill; the ALJ merely concluded that these activities were inconsistent with plaintiff's allegations. Tr. 19-20. This was error.

In sum, the ALJ erred in rejecting plaintiff's subjective symptom testimony because he failed to provide specific, clear, and convincing reasons as to why her testimony contradicted, or was undermined by, the objective medical record and her activities of daily living.

### III. Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in rejecting PA Christopher Smith's medical opinion. Pl. Br. at 10-13. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In May 2021, treating provider Christopher Smith (PA) indicated that plaintiff would have difficulty maintaining attendance, such that she would likely miss at least two or more days from a full-time job. Tr. 2711–12. PA Smith specifically attributed this to flare-ups of pain and the need for follow-up appointments. Tr. 2712. PA Smith also noted that plaintiff had "[s]evere chronic abdominal pain related to necrotizing pancreatitis" for which she was prescribed oxycodone. Tr. 2711. The ALJ found Mr. Smith's opinion "not persuasive" because it was inconsistent with "baseline description of functioning on establishing with Mr. Smith's pain management clinic and her reports of significant relief with treatment received[.]" Tr. 21-22.

First, the ALJ failed to adequately address the strength of the evidence underlying PA Smith's opinion when finding it unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ noted PA Smith "completed a form in

11 – OPINION & ORDER

May 2021," but did not evaluate the objective medical evidence underlying the opinions provided on that form. Tr. 21-22. Defendant argues that "PA Smith's check the box opinion is of little evidentiary value," but this is an impermissible *post hoc* rationalization the ALJ did not mention, which this Court may not consider on appellate review. *Connett*, 340 F.3d at 874 (stating the court "is constrained to review the reasons the ALJ asserts"). PA Smith treated plaintiff since November 2019 for "chronic abdominal pain related to necrotizing pancreatitis," and based his opinion that she would miss two days or more per month from work on the evidence gathered during that treatment history. Tr. 2711–12. On remand, the ALJ must consider the strength of this evidence and whether it justifies the limitations provided in PA Smith's opinion.

The ALJ also failed to cite substantial evidence that the record was inconsistent with PA Smith's medical opinions. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ found PA Smith's opinion unpersuasive because it was "not consistent with the claimant's baseline description of functioning …and her reports of significant relief with treatment received." Tr. 22. But the medical record the ALJ cites is not inconsistent with PA Smith's opinion that plaintiff would miss two or more days of work a month due to pain. The cited records reflect that plaintiff's pain is "incapacitating" and that conservative treatment measures have failed. Tr. 2271 (intake appointment, November 2019). By February 2020 she reported "some benefit" from a regiment of oxycodone and morphine, but reported having to take more oxycodone than prescribed in order to get relief. Tr. 2288–89. At that time she reported an average pain level of 6 and worst pain at 8. Tr. 2289. Plaintiff reported a slight improvement in March 2020, with average pain of 5, but worst pain still reaching 8. Tr. 2296. In

12 – OPINION & ORDER

January 2021—the last record cited by the ALJ—plaintiff's average pain was down to a 3, but she still reported her "worst pain" at 9—indicating that she continued to have flares of pain. Tr. 2353. Although plaintiff moderated her pain with medication, she still had significant flares, which fits PA Smith's opinion that she would be unable to work for two or more days a month because "she has flare ups of severe pain." Tr. 2711. Ultimately, the ALJ failed to cite substantial evidence of inconsistent medical records to support his decision to find PA Smith's opinion unpersuasive, which was error.

## IV. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the

district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful error by failing to identify plaintiff's pancreatitis as a severe impairment at step two, failing to provide specific, clear, and convincing reasons to reject plaintiff's subjective symptom testimony and by failing to support his decision to find PA Smith's opinion unpersuasive with substantial evidence. After reviewing the record, however, conflicts and ambiguities remain between the medical record and plaintiff's allegations that her pancreatitis pain rendered her totally unable to work during the relevant period. The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can adequately evaluate plaintiff's pancreatitis at step two, plaintiff's testimony and PA Smith's opinion, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed and this case is remanded for further proceedings.

IT IS SO ORDERED.

DATED this 9th day of October, 2024.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge